I wonder if the attorneys that were going to argue would step up and identify yourselves for the record. My name is James Pank. I represent the appellant Michael Lacy. Good morning, Mr. Pank. Good morning. Janet Mahoney on behalf of the people of the state of Illinois. Ms. Mahoney. Good morning. You'll each have 15 minutes. You may save out any portion you wish for your response. Thank you, James. How do you pronounce your last name? Payonk. Payonk. Thank you. Thank you, sir. Essentially, without rehashing the facts and everything that went on, Mr. Lacy is claiming in his post-conviction petition that he was deprived of his right of effective assistance of counsel. This happened in a number of ways. First, this case all starts with the eyewitness identifying a light-skinned black male with braids as a person who was an assailant upon her. From that, Mr. Lacy is eventually sentenced to 25 years in the Illinois Department of Corrections. His trial counsel filed a motion to suppress his identification. At the motion to suppress his identification, the victim took the stand and testified that immediately over the bench where she was assaulted, there was a light that illuminated the area and allowed her to see the faces of her assailant. She then said the light was immediately to the side of the bench. As it turns out, as you can see, that testimony was false. It was false because... She testified at the trial, there wasn't lighting directly overhead, which makes her testimony at the motion to suppress false because clearly there was no lighting over the bench. Okay. Well, you're concluding it was false. It could easily have been a mistake. And wasn't she cross-examined at trial about the previous testimony? She was not. She was attempted to be cross-examined at trial about the previous testimony, but the impeachment was never completed and that questioning was actually stricken from the record. And whether she was, I don't believe she intentionally lied about or misstated about the position of the... Okay. All right. So when you said false, you didn't mean it was a lie. I didn't mean it was lying. I just meant that if she was mistaken, she was mistaken. The testimony is not true. There was no light directly over the bench. And it's the lighting over the bench that led to the identification of Mr. Lacey. Well, did she say that also? Did she also say that it wasn't really the lighting, but she had an opportunity to see him? She described him. She was able to describe his complexion. She was able to say that he had grades. I mean, she was cross-examined about her ability to observe at the trial. Well, at the trial she was. At the motion to suppress identification, she wasn't. And that's where this all starts. And that's why I believe this is critical. And everything that happened is cumulative from that. Because none of that cross-examination, when trial counsel had the opportunity to do so, when her identification of Mr. Lacey is at stake, he never asks any of those questions. He doesn't go into any of the factors that the courts would look to to determine if the photo array or the lineup were unpermissibly suggestive. There are certain factors that the courts look to, and counsel didn't go into any of those. And we do have a photo array where Mr. Lacey is the only light-skinned black male. And we do have a physical lineup where Mr. Lacey is the only light-skinned black male in the physical lineup. Wasn't there a photo array where he was bald? That's the one, yes. The photo array is where Mr. Lacey is bald, but in that photo array he is the only light-skinned black male. And I think it's important to remember But two different people identified him that were victimized. Yes, Mr. Vines also did identify him. He also identified the photograph of the bald person. Yes. He did not testify at the motion to suppress identification order. No, but he testified at trial and he identified him in lineup and also at trial. That is correct. So if there was no motion to suppress here, you wouldn't be here, would you? If there was no motion to suppress, I believe I would not be here. That is correct. I will admit that. And I did admit that for the record, Your Honor. But there was a motion to suppress, and again, I think that's where it all starts. And then after that, when we get to trial, I think the major mistake at trial for trial counsel is letting in the evidence of the canine tracking. Clearly in Illinois, that is just not an issue. Well, are you saying that's a constitutional violation? I'm saying that amongst... This is a post-conviction petition. So you must be saying it's a constitutional violation. Yes, I am. All right. Now, constitutional violations can be waived. Can they not? They can be waived. And this was something that was in the record. So is this one of the appellate... You probably did argue that the appellate counsel was also ineffective for not challenging the canine. Correct. But the canine testimony was kind of limited, wasn't it, in terms of what it said or what it implied? Actually, I think directly to the contrary, because if Your Honor will remember, what we're doing is we're sitting at a jury trial. So what happens is first the jury hears from the canine officer who talks about what the canine does and how the canine tracked. Then the jury heard from a second officer who actually testified based on where the canine stopped, that was a location that was two blocks from Mr. Lacey's home. Then we heard from a third officer who testified that when he arrested Mr. Lacey, it was in front of his mother's home. So we've got the cumulative effect of three officers. We've got the canine testimony, which is clearly inadmissible and clearly highly prejudicial. When was the last time that the Supreme Court talked about this kind of thing? I believe it was 1994 in People v. Cruz. And didn't the opposing counsel Mahoney point out that the majority, actually all but four states, permit some form of this kind of general testimony? That is absolutely correct. She did point that out. But the Supreme Court said emphatically Illinois does not recognize that and we are not going to recognize it. And the reason is they find it unreliable and they find it highly prejudicial. Well, so that would be how you would say you've established prejudice? I'm sorry, I don't understand. That would be how you would say you've established the prejudice wrong of the ineffective assistance of trial and subsequently appellate counsel? Yes, very much so. You don't think the other evidence, two eyewitnesses identifying him in photos shortly after the offense and then identifying him at trial is generally considered substantial evidence? I think it is substantial evidence. But if we then go back to the motion to suppress, if counsel was not ineffective at the motion to suppress, I believe that the identification would have been omitted from the trial. If we omit that identification from the trial, then we're at a point where we have the canine evidence. All right. That is the heart of it here. What case would you suggest would support this notion that a motion to suppress would have been granted here because of her statement at one time that she thought there was light and she thought it was to her left, and then at trial she said there wasn't light directly above. And the other testimony from other individuals established, including the investigator for the public defender's office, didn't he take photographs and actually show where the lights were? He did for trial in 2005. Okay. So the jury was aware of, you know, the light. But what case would suggest that the trial judge would have suppressed the identification even if she said at the motion that it was right overhead, but at trial she said, no, it wasn't overhead? Why would that cause the trial court to suppress her identification because of discrepancies? Well, the trial court wouldn't suppress the identification because of the discrepancy at trial because the trial court wouldn't be at trial yet. What the trial court would have done, I believe, had counsel been effective, is suppress the evidence of the lineup and the photo array after the motion to suppress. Yeah. I'm asking you that. What are you hanging your hat on that the court would have simply said that the motion to suppress the lineup is denied? These are, you know, I mean, the explanation or a discrepancy in saying, you know, at the motion to suppress that she thought there was light overhead and that later she thought, you know, she said there was no light directly overhead. Why would the court suppress that? Doesn't that go to the weight of the identification? Yes. In fact, it does under People v. Williams, but at the Then how do you get to the suppression that you're saying you would have accomplished? Because had counsel gone and looked at the scene and known there was no light over the bench, when the witness testified that she was using the light that was directly over the bench to identify the assailants, counsel would have been able to impeach her on that statement by showing not only was there not a light over the bench or close to the bench, the closest light was 120 feet away. You lead off with that in your brief as being the first, and I assume that you led off with it, the most important example of ineffective assistance of counsel, his failure to visit the scene. Yes. What's your best case for that? On that specific issue of the ineffective assistance of counsel, have you got a Supreme or an appellate court case that addresses the issue of the attorney failing to visit the scene of the crime? I don't have a specific case, Your Honor. I didn't think so, otherwise you would have cited it. Yes, but what I'm relying on is That's why I asked you, because I didn't see anything in your brief with respect to that precise issue, that a trial attorney has been found ineffective in a criminal case for failing to visit the crime scene. I do not, I have not cited a case like that, and I did not find a case like that, but I believe if we use the Strickland standard and whether counsel was objectively reasonable as a trial counsel, I think it's clear that any trial counsel in a case where the main focus of the case is the defendant, it always happens at night, they have an obligation to go to the scene. How do we know that he didn't go to the scene? Well, actually, we don't specifically know he didn't go to the scene, but if he did go to the scene and he did look and he did know that there was no light over the bench, why, when the victim testified that there was a light over the bench, wouldn't he impeach her? Correct. So it's either he didn't go to the scene and didn't know, or he went to the scene and knew and then did not impeach her with what he knew. Okay. So, you know, sometimes that's trial strategy. I understand sometimes it is, but in this case, at that motion, I can't find any reason as a trial lawyer why you wouldn't want to impeach the main witness where the lighting was in a case where it's critical, the critical issue is the identification of your client. Yeah, but wasn't she very, very emphatic that she had a good look at his face, that she'll always remember that, that this was a very traumatic event in her life, that she could describe this man forever, ever, and ever? I'm not sure she was that emphatic, but I would say that most victims are that emphatic. But remember, her identification of Mr. Lacy didn't take place until ten days after the date of the crime, and that's one of the factors the court looks to the lighting, but when the actual identification took place. Well, does that go both ways? I mean, ten days isn't like a year. It's not six months. It's not even a month. Doesn't that kind of go against what you're saying, that, well, it was close enough in time, but yet it's not so far away, and yet she picked him out, and he was bald in that picture, wasn't he? Correct. He was bald, but he was light-skinned, and I actually think that ten days is a long time, considering her only description of the victim was light-skinned, black male with braids. There was no height, weight, build, nothing else. That's all it was, and I think going from that to the identification ten days later. Didn't she also say, wasn't this, wasn't her testimony that is, you know, days got away from the actual sexual assault, that her memory of everything started to become more clear? I think she did testify that her memory was clearer a week after the incident than it was right after, and clearly the night of the incident, she wasn't able to give any descriptions, and the next day she did describe one of the co-defendants, Antonio Hale. Would you agree that at the time of the trial, the defense counsel's impeachment of the witness was good, that he went into the lighting in great detail at the trial? I think the lighting was gone into at the trial in great detail. I think the time for going into the lighting wasn't the trial. I think it was the motion to suppress. Five of your arguments address the ineffectiveness of the counsel. The seven that you bring up have to do with his failure to properly cross- examine or cross-examine at all at the suppression hearing. Correct. And that was the time when all of that testimony, especially when it's not before the jury. There's a lot of prejudice that can come to certain cross-examination in front of a jury at a trial, and it's much different at a motion to suppress when it's in front of the judge. This whole notion about lighting, wasn't there testimony that this park, that there was lighting, that something about children being able to play in the park because the lighting wasn't even, I mean, it was pretty good for, this was summertime, right? It was August. Yes. But the trees were full of leaves, and the lights that they actually talked about at trial, one in a school 500 feet away, having to go through all the trees, and the other in a parking lot of the co-op that was adjacent to it was farther away than 120 feet that the maintenance shed was that Mr. Gross referred to in his affidavit that had the one single bulb. There was reference, Your Honor, to testimony about the ability to be able to read a book. I think something like that. Yeah. You couldn't read a book, but you could play out. Yes. So, I mean, how dark could this possibly have been? Well, there clearly are no lights, and there's no lights in 120 or more feet, and the, she relied on, at the motion to suppress, the victim used the fact that there was lighting over the bench to make her identification of Mr. Lacey. You filed a very thorough brief. Do you want to sum up now so we can hear from the State? Yes. I think the other main issue I want to bring up, I actually believe that letting in the canine testimony was so prejudicial that that in and of itself would require reversal. I did not argue that in my brief. I admit that. As I was preparing for it and rereading Cruz and what the Supreme Court said and how they termed things, with those three witnesses and then the State mentioning it in its opening and the State also arguing the canine testimony in its closing and using that to bolster the identification of Mr. Lacey, I think that is so prejudicial that that in and of itself should warrant reversal. However, I believe the failure to object to that is clearly ineffective, especially in your brief. I did not argue that it warrants reversal in my brief. I admit that. Okay. Well, thank you for your candor on that subject, anyway. My point is, cumulatively, if you look at all the cases,